UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA HAGERL,

        Plaintiff,

vs.                           CIVIL NO.:  05-CV-72910-DT

COMMISSIONER OF             HON. GERALD E. ROSEN
SOCIAL SECURITY,           MAG. JUDGE WALLACE CAPEL, JR.

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION**

      It is recommended that the Court grant Plaintiff's Motion for Remand, deny Defendant's

Motion for Summary Judgment, and remand this case to the Secretary for further proceedings.

**II.**      **REPORT**

      This is an action for judicial review of the Defendant Commissioner's final decision denying

Plaintiff's application disability insurance benefits [DIB].  Plaintiff filed her application for benefits

on June 28, 2002, alleging that she has been disabled and unable to work since June 30, 1997, due to

"chronic fatigue, muscle and joint pain, [and] Epstein Barr."  (TR 47-49, 54).[1]  The Social Security

Administration [SSA] denied benefits initially on October 10, 2002.  (TR 28-32).  A de novo hearing

was held on September 15, 2004, before Administrative Law Judge [ALJ] Gilbert Sheard.  (TR 228-

57).  In a decision dated January 24, 2005, the ALJ found that Plaintiff was not disabled.  (TR 16-23).

_____

      [1]Plaintiff reported that she was unable to work in March 1997 on her Adult Disability Report.
(TR 54).

1

The Appeals Council denied a request to review the decision on June 10, 2005.  (TR 5-8).  The Plaintiff has commenced this action for judicial review.

A.    **TESTIMONY**

Plaintiff testified that she was born on December 6, 1947, and last worked as an Licensed Practical Nurse [LPN] at a nursing home.  (TR 232-33).  She stated that she was responsible for "[p]assing meds, helping residents possibly get in and out of bed, [and] helping them in a wheelchair." (TR 233).  She stated that she also helped to transfer the patients at times, which required lifting at least 100 pounds.  Id.  She stated that she would not be able to return to nursing due to the lifting requirements and her inability to be precise.  (TR 234).  She stated that she fears she might injure someone if she did "the wrong thing."  Id.  She stated that she did not have enough memory and concentration to be sure that she was giving the patients the medications that they had actually been prescribed.  (TR 253-54).

She testified that in 1997 she was working full-time as an LPN, as described above, even though she was limited to light work at the time.  (TR 243, 252-53).  She stated that the position was her only source of income and insurance, so she kept working as she feared she would lose her home. (TR 243).  She stated that she also usually had help when she lifted the patients.  (TR 243-44).

Plaintiff also testified that she worked part-time at a bakery in "1990, 1991," which required her to be on her feet all day and to lift about twenty pound pots and pans.  (TR 233, 252).  She stated that she would not be able to return to same due to her inability to stand for short periods of time.  (TR 233-34).  Since 2002, she stated that she can only stand for fifteen minutes to a half hour.  (TR 234-35).

Plaintiff testified that her fatigue prevents her from working, because she is too tired after doing anything for an hour or two at a time, even with rests in between.  (TR 235).  She stated that

2

washing clothes fatigues her and that she can only do one load before she needs to rest.  Id.  She stated

that she often has to leave a load of clothes in the washer until the next day due to lack of energy.  (TR

235-36).  She stated that she has fatigue every day and has suffered from same since filing her

application with SSA.  (TR 236).  She stated that two years prior to the hearing she could do all of her

own housekeeping.  (TR 244).  She stated that she currently lives with her husband and that he helps

with the household chores.  (TR 244-45).

Plaintiff also testified that she has had joint pain in her knees for the past several months, and

also when she filed her application in 2002.  (TR 236).  She stated that she has "pain [in her both

knees] like a stabbing or kind of a shooting pain when [she] get[s] up and down."  (TR 236-37).  She

stated that she has to hold onto something when she gets up and has taken Tylenol, but it has not been

effective.  (TR 237).

She also stated that she has headaches from high blood pressure.  Id.  She stated that she

usually lies down when she gets a headache.  Id.  She stated that she typically does same on a daily

basis for two to five hours.  Id.  She stated that this has been going on for at least the past two years

prior to the hearing.  (TR 237-38).

Plaintiff stated that she can dress herself but does not at times when she is too tired.  (TR 238).

She stated that she has to be careful when bathing because if she closes her eyes, she loses her balance.

Id.  She described her typical day:  "[she] get[s] up, get[s] dressed, usually eat[s] some breakfast,

take[s] the dog out to go to the rest room and come[s] back in and rest[s]," for about an hour to a hour

and a half.  Id.  She stated that she then has lunch and tries to do a load of laundry or vacuum.  Id.  She

stated that she does not do both activities in the same day.  Id.  She stated that she then rests some more

for about an hour to two hours.  Id.  She stated that after eating dinner she usually sits for about three

or four hours until it is time for bed.  (TR 239).  She explained that if she does go out to visit friends

after dinner, it is usually only for an hour due to fatigue.  Id.  She stated that she sits in a reclining chair and watches television or reads magazines.  Id.

Plaintiff testified that she has difficulty sleeping and wakes up throughout the night three to four days a week.  (TR 239-40).  She stated that at times she sometimes wakes up due to pain, and other times she "just wake[s] up," but she does not know why.  (TR 239).

She stated that she also suffers from depression because she feels sad and inadequate that she can no longer do the same things.  (TR 240).  She stated that depression has been troubling her for two years, affecting what she can do in a typical day because she does not have stamina.  Id.  She related that she also has memory problems and is forgetful.  Id.  For example, she stated that she forgets to turn off the oven, has left lights on, and has left the garage door open.  (TR 240-41).

She stated that she also has difficulty concentrating and cannot focus on one task.  (TR 241). For example, she explained that she has a birdhouse that she has not finished for months because she lacks the energy to do same.  Id.  Plaintiff testified that she has had a problem finishing tasks for the last two to three years.  (TR 241-42).

She stated that she is treating with Jennifer Johnson, a physician's assistant, and Dr. Tamas, a physician, for the past two years.  (TR 242).  Prior to that, she testified that she saw Dr. Conley.  Id. She stated that her doctors have been running tests, but to no avail.  Id.  She stated that there has been an indication that she should see a rheumatologist.  Id.  She then stated that Dr. Conley wanted to run some tests but could not do so due to her lack of insurance.  (TR 242-43).

B.    **MEDICAL EVIDENCE**

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive.  The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

C.    **VOCATIONAL EXPERT'S TESTIMONY**

Judith Findora, a vocational expert [VE], testified at the hearing.  (TR 252-56). The VE testified that claimant could do the full range of unskilled work.  (TR 202, 207, 255-56).  The VE testified that she was considering only the following nonexertional restrictions:[3] "difficulties in maintaining attention and concentration for extended periods.  The job must be routine and repetitive which is descriptive of unskilled work you can learn in a 30 day period.  She has less than average memory.  For this reason do not give her complex or abstract work."  (TR 255-56).

D.    **ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "the only established severe impairment on or prior to the date last insured was the claimant's depression." (TR 20, 22).  The ALJ determined that although she had an impairment that is severe within the meaning of the Regulations, she does not have an impairment or a combination of impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  Id.  The ALJ found Plaintiff's testimony not to be totally credible.  (TR 20-21, 22).  He determined that Plaintiff "had a residual functional capacity for a full range of work, with only the limitations: [d]ue to difficulties maintaining attention and concentration for extended periods, the job must be routine and repetitive.

---

[2]See Subpart E, infra, page 6.

[3]This testimony was based on Exhibit 15E.  (TR 255).

5

She has less than average memory.  For this reason do not give her complex or abstract work as set out in (Exhibit 15E)."  (TR 21, 22).  Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 23).

## E.    ANALYSIS

Plaintiff advances one main claim in her Motion for Summary Judgment.  Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence when he found at Step 2 that Plaintiff's chronic fatigue was not a severe physical impairment.[4]  In response, Defendant makes a Motion for Summary Judgment contending that the ALJ's decision is supported by substantial evidence.[5]  The matter is now ready for decision.

### 1.    Standard of Review

This Court's review of the ALJ's conclusions is limited.  The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g) (2005).  Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  It is more than a scintilla of evidence, but less than a preponderance of evidence.  Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989).  This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed.  Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994).  Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence.  Mullen v. Bowen, 800 F.2d 535, 545 (6th

---

[4]Plaintiff's Motion for Summary Judgment and Brief filed February 8, 2006 (hereinafter "Plaintiff's Brief") at pages 3-9.

[5]Defendant's Motion for Summary Judgment and Brief filed May 3, 2006 (hereinafter "Defendant's Brief") at pages 11-18.

Cir. 1986).  Finally, consideration of the whole record does not mean that the ALJ must mention or

comment on each piece of evidence submitted.  Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Applying these standards, I will analyze Plaintiff's claim.

### 2.      Discussion

### a.      Severe Impairment

Plaintiff argues that the ALJ failed to include her chronic fatigue as a severe impairment.[6]

Farris v. Sec'y of Health and Human Servs., 773 F.2d 85, 90 (6th Cir.1985) defines an impairment that

is not severe as a "slight abnormality which has such a minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age, education and

work experience."  Nevertheless, if the ALJ considers the impairment past Step 2, it is irrelevant

whether it was severe.  Hamilton v. Sec'y of Health & Human Servs., 991 F.2d 795, 1993 WL 106845,

at *6 (6th Cir. 1993).  See also Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th

Cir. 1987) ("[s]ince the Secretary properly could consider claimant's cervical condition in determining

whether claimant retained sufficient residual functional capacity to allow him to perform substantial

gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe

impairment could not constitute reversible error.").  However, the present ALJ did not consider her

chronic fatigue past Step 2.[7]

Coincidentally, when Farris was being decided, the Secretary

issued an interpretive ruling, SSR 85-28, in which the agency clarified its
implementation of 20 C.F.R. § 404.1520(c) in light of several court decisions. The

---

[6] Plaintiff's Brief at pages 3-6.

[7] It is noted by the undersigned that the ALJ did state that he considered her "impairments"
in combination, but within the body of his decision, he clearly stated that her depression was the
only impairment he was considering in determining disability.  (TR 20).

2:05-cv-72910-GER-WC   Doc # 25   Filed 07/26/06   Pg 8 of 16   Pg ID 362

ruling emphasized that an impairment was to be found not severe only when medical
evidence established a slight abnormality or combination thereof which would have
no more than a minimal effect on a claimant's ability to work even if the individual's
age, education, or work experience were specifically considered.

Salyers v. Sec'y of Health and Human Servs., 798 F.2d 897, 901 (6th Cir. 1986).  Thus, the question

becomes whether the chronic fatigue was only a slight abnormality.

### b.    Treating Physician and Chronic Fatigue

Plaintiff argues that Dr. Conley's treatment notes indicate that her fatigue was at least a

severe impairment.[8]  Plaintiff alleged that the ALJ improperly "reports that Dr. Conley stated the

Plaintiff's physical examination was normal and that he did not have any objective evidence of her

being disabled."[9]  Defendant counters that

> [w]hile the ALJ mistakenly cited Dr. Conley as saying that he was ruling out other
> diseases – whereas the doctor stated that Plaintiff could not afford to have such
> testing performed – the ALJ did correctly evaluate Dr. Conley's report as being
> based solely upon Plaintiff's subjective complaints. See 20 C.F.R. § 404.1529(a) (a
> claimant's statements about his or her pain or symptoms will not alone establish that
> he or she is disabled). Despite the fact that chronic fatigue syndrome is a condition
> which may be diagnosed by ruling out other conditions, there are still requisite
> criteria for assessing the existence of a medically determinable impairment. See
> Social Security Ruling (SSR) 99-2p, (<http://www.ssa.gov/OP_Home/rulings/di/01/
> SSR99-02-di-01.html>) (1999). Here, as explained below in more detail, the ALJ
> noted that the diagnosis of chronic fatigue did not meet any of these criteria and,
> accordingly, he properly rejected the diagnosis (Tr. 19).[10]

It is true that the ALJ gave reasons for rejecting her fatigue and fibromyalgia.  (TR 19-20).  The ALJ

concluded that Dr. Hughes' letter, Dr. Dollard's review, and the examination findings confirm that

these are "not medically determinable impairments."  (TR 19).

---

[8]Plaintiff's Brief at pages 3-5.

[9]Plaintiff's Brief at page 3 (citing TR 18).

[10]Defendant's Brief at page 13.

In 1992, the Sixth Circuit had occasion to decide a social security disability claim based on chronic fatigue syndrome. In <u>Cohen v. Secretary of Health & Human Servs.</u>, 964 F.2d 524, 526 (6th Cir.1992), the claimant had been diagnosed with chronic fatigue syndrome, and suffered a panoply of documented maladies. Two of her treating physicians had noted the extremity of the claimant's afflictions, and expressed doubt as to whether the claimant would be able to work again. <u>Id.</u> at 526. The ALJ found that claimant's level of activity (she attended law school part-time, was attempting to continue her ballroom dancing, etc.) substantially undermined her credibility regarding her limitations. <u>Id.</u> at 528. The court acknowledged that although it was "a close case," <u>id.</u> at 531, that the ALJ had failed to give due consideration to the conclusions and opinions of the claimant's treating physicians, and claimant's own testimony, regarding the limitations imposed by her disease. <u>Id.</u> at 529-31. The court found that the evidence relied upon by the ALJ did not constitute substantial evidence, and remanded the case to the district court with instructions to award benefits to the claimant. <u>Id.</u> at 532.

<u>Buxton v. Halter</u>, 246 F.3d 762, 774 (6th Cir. 2001). In <u>Buxton</u>, the Sixth Circuit distinguished <u>Cohen</u> and stated the question before the Court was

> whether a plaintiff, who sincerely believes that she is disabled and suffering from numerous ailments, is disabled, as defined by the Social Security Act, when the available evidence indicates that the plaintiff is, in fact, not physically disabled, and is only limited by her own mistaken beliefs regarding her physical condition. This Court holds that in such a situation, a plaintiff is not per se disabled.

<u>Id.</u> The Court in <u>Buxton</u> also noted that there was conflicting evidence from treating physicians as well as from Plaintiff's own report of daily activities. <u>Id.</u> at 775. Lastly, the Sixth Circuit provides the reason that it can be distinguished from the present case within its opinion, stating that <u>Buxton</u>

> is not like most other CFS cases, in that Buxton here is not arguing that the ALJ failed to consider her exertional limitations, such as her fatigue, etc. This distinguishes this case, for example, from <u>Cohen</u>, <u>supra</u>, and the First and Ninth Circuit opinions. Those cases are further distinguishable, however, on the basis of the treating physician testimony, because here, we do not have anything as concrete and unequivocal as the claimants in those cases had regarding the nature of their disabilities and thus, their limitations.

<u>Id.</u>

In the present case, Plaintiff argues that the ALJ, in fact, did not defer to the treating physician's, Dr. Conley's, opinion.[11] Plaintiff further points out that fatigue and fibromyalgia are not easy diseases to diagnose.[12] Swain v. Comm'r of Soc. Sec., 297 F. Supp. 2d 986, 990-993 (N.D. Ohio 2003). Dr. Conley stated that

> [h]er physical exam appears relatively normal, but that is not unusual for someone with chronic fatigue. She is to contact us in 60 day sand [sic] let us know how she is doing and whether any of the two supplements have helped and we will proceed from there. I did not schedule her a recheck appointment, since we are unable to do an adequate work-up.

(TR 126).[13] He also stated that Plaintiff "is not able to afford an adequate evaluation that would allow me to assign a diagnosis of chronic fatigue syndrome. To do so, we have to rule out other disease processes." (TR 125).[14] "In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups." McGlone v. Chater, 906 F. Supp. 402, 406 (E.D. Ky. 1995) (citing Gooch v. Sec'y of Health and Human Services, 833 F.2d 589, 592 (6th Cir.1987)).

In addition, as Plaintiff points out,[15] the ALJ fails to acknowledge that "[m]edical evidence of the applicant's condition after the expiration of insured status must be considered because it may be relevant to the earlier medical condition." Wallace v. Comm'r of Soc. Sec., 367 F. Supp. 2d 1123, 1134 (E.D. Mich. 2005). See also Martonik v. Heckler, 773 F.2d 236, 240 (8th Cir. 1985) (evidence of medical condition after last date insured must be considered if it tends to show claimant's health

---

[11]Plaintiff's Brief at page 8.

[12]Plaintiff's Brief at page 8.

[13]Plaintiff's Brief at pages 3.

[14]Plaintiff's Brief at pages 4.

[15]Plaintiff's Brief at page 5.

10

before that date); <u>Ellis v. Schweicker</u>, 739 F.2d 245, 247-49 (6th Cir. 1984); <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1169-70 (8th Cir. 1984); <u>Parsons v. Heckler</u>, 739 F.2d 1334, 1340 (8th Cir. 1984); <u>Halvorsen v. Heckler</u>, 743 F.2d 1221, 1225-26 (7th Cir. 1984) (treating physician's opinion after date last insured is still entitled to significant weight). Therefore, any of the medical evidence following the insured period that relates to Plaintiff's chronic fatigue could properly be considered by the ALJ. The ALJ failed to recognize this and rejected the additional opinions of Physician's Assistant Johnson and Dr. Tamez, because they fell outside the insured period. These opinions were consistent with Plaintiff's allegations of fatigue and disability.

### c. Credibility

However, there is no doubt that Plaintiff's allegations regarding chronic fatigue are based on subjective complaints. Thus, the issue boils down to whether credibility was properly analyzed. As Plaintiff points out, the ALJ actually stated at the hearing that she was "an honest witness." (TR 249).[16] However, the ALJ found that Plaintiff was not entirely credible. (TR 20-21, 22). This inconsistency is troubling.

Defendant argues that Plaintiff's credibility is undermined, in part, because "Plaintiff points to no evidence demonstrating that she followed any of Dr. Conley's July 2002 recommendations during the relevant period, in terms of using the supplements he recommended or seeking free samples, as he advised."[17] However, a careful review of the record reveals that "[s]he tried soymilk for a short period, but she did not like it and eventually discontinued it, because it did not seem to help. She

---

[16]Plaintiff's Brief at page 7.

[17]Defendant's Brief at page 16 (footnote omitted).

noticed the B12 does not help. . . . Centrum once daily has not helped.  She uses Tylenol for muscle

pain." (TR 125).

      The ALJ found that

> regarding the claimant's subjective complaints, she was not a credible witness.  She
> made complaints of headaches for which there is no medical support.  Her own treating
> physician, Dr. Conley, was unable to confirm an objective basis for fatigue complaints
> made in July 2002, and in fact suggested at that time that the claimant try to find part
> time work because disability was not established by the record.[18]  As noted above,
> many of the claimant's current complaints do not relate back to the time period while
> she was still of insured status.  Her tendency to exaggerate her symptoms is further
> demonstrated by the fact that on various occasions treating physicians have resorted
> to a diagnosis of fibromyalgia, when the criteria for such a diagnosis are not present,
> in an attempt to explain the claimant's complaints.   Given the claimant's clear
> tendency to exaggerate, especially with respect to her limitation prior to the last date
> insured, great reliance must be placed upon the objective medical record to determine
> her ability to function at that time.  The claimant is given some benefit of the doubt
> with respect to certain portions of her testimony, as indicated below.

(TR 18-19).  However, the ALJ failed to properly analyze her credibility consistent with 20 CFR §

404.1529(c)(3).  That regulation states that

> [w]hen determining credibility, in addition to the objective medical evidence, the
> ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other
> symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual
> takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief
> of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain
> or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20
> minutes every hour, or sleeping on a board); and

---

[18]Plaintiff argues that the doctor's recommendation for part-time work means that she was disabled; however, as Defendant points out "it appears from his notes that Dr. Conley was simply advising Plaintiff how to obtain some additional care given her financial and insurance situation." Defendant's Brief at page 16.

> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3). Further, the regulations clearly set forth that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 CFR § 404.1529(c)(2). In addition, as Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." See also, Murray v. Comm'r of Soc. Sec., 2004 WL 1765530, No. 01-10020-BC, at *4 (E.D. Mich., Aug. 3, 2004).

The ALJ in the present case did discuss Plaintiff's daily activities, but only in terms of summarizing her testimony. Further, he failed to elaborate on any other factors under 20 CFR § 404.1529(c)(3). The undersigned recognizes that the "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted). However, when taking into consideration the ALJ's failure to find her fatigue constituted a "severe"' impairment, the failure to enumerate the factors regarding credibility under the regulations, his inconsistent comments by the ALJ during the hearing regarding her honesty, his failure to consider her inability to afford treatment, and his mistakes regarding her treating physician's opinion (as recognized by the Defendant), the undersigned recommends that Plaintiff's request for remand be granted.

3.    **Remand Versus Benefits**

The remaining issue is whether remand or an award of benefits is the appropriate remedy for Plaintiff.  It is firmly established that under § 405(g), a court may remand for an award of benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994)(citations omitted).  More specifically, "[a] judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." Id. at 176 (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

Unfortunately, the ALJ's adverse decision was deprived of substantial evidentiary support because he failed to properly analyze several factors, including: whether Plaintiff's fatigue was "severe;" her credibility; her treating physician's opinion; and evidence of her chronic fatigue following the expiration of her insured status..  Therefore, a remand for benefits would be premature at this time.

## III.   CONCLUSION

For the reasons stated above, I respectfully recommend that the court **GRANT** Plaintiff's Motion for Remand, **DENY** Defendant's Motion for Summary Judgment, and **REMAND** this case for proceedings consistent with this report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

14

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.


s/Wallace Capel, Jr.
**WALLACE CAPEL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**Date:** July 26, 2006

15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**<u>CERTIFICATE OF SERVICE</u>**


I hereby certify that on <u>July 26, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>James A Brunson and Matthew F. Taylor,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606</u>.


<div style="margin-left: 50%;">

<u>s/James P. Peltier</u>
United States District Court
Flint, Michigan 48502
810-341-7850
E-mail: pete_peltier@mied.uscourts.gov

</div>

16